```
_____ FILED      _____ ENTERED
_____ LODGED     _____ RECEIVED

SA    SEP 18 2014
                AT SEATTLE
         CLERK U.S. DISTRICT COURT
      WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY
```

R#66347  NO 5/1/55

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. by KAT NGUYEN-SELIGMAN, <br><br> Plaintiff, <br><br> vs. <br><br> LENNAR CORPORATION, a Delaware corporation; UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC, a Florida corporation; and EAGLE HOME MORTGAGE OF CALIFORNIA, INC., a California corporation, all doing business as Eagle Home Mortgage, Inc. and/or Eagle Home Mortgage; <br><br> Defendants. | NO.  C14-1435 RSM <br><br> COMPLAINT AND JURY DEMAND <br><br><br> **Filed Under Seal** <br> pursuant to <br> 31 U.S.C. §3730(b)(2) |

COMES NOW the United States of America, by and through Relator Kat Nguyen-Seligman, qui tam, as a former in-house financial services Auditor of Defendants, and for a cause of action alleges as follows:

## I. JURISDICTION and VENUE

1.1 Jurisdiction exists pursuant to 31 U.S.C. §3730(b)(1) and 31 U.S.C. §3732 in that this action seeks remedies on behalf of the United States of America for violations of 31 U.S.C. §3729 by the Defendants.

COMPLAINT AND JURY DEMAND - 1

Teller & Associates, PLLC
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

1.2 The "allegations or transactions" upon which this suit is based have not been publicly disclosed in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit or investigation, or from the news media. 31 U.S.C. 3730(e)(4)(A).

1.3 The Qui Tam plaintiff is the original source in that she "has direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. §3730(e)(4)(B). She is providing information through this litigation to agents of the United States Government in connection with this matter.

1.4 LENNAR CORPORATION is a Delaware corporation. UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC is a Florida corporation. EAGLE HOME MORTGAGE OF CALIFORNIA, INC., is a California corporation. These three corporations (collectively "Defendants") all do business in Seattle, Washington, within the Western District of Washington and have all done business as Eagle Home Mortgage, Inc. and/or Eagle Home Mortgage at various times relevant to this litigation.

1.5 Venue exists in this district pursuant to 31 U.S.C. §3730(b)(1) in that Defendants are qualified to do business in the State of Washington and transact substantial business in the Western District of Washington.

## II. PARTIES

2.1 Kat Nguyen-Seligman ("Relator") resides in King County, Washington. She is a former employee of one or more of the Defendants who was at all material times employed in the capacity of an Auditor. Ms. Nguyen-Seligman was employed by Defendants from approximately January 2013 until January 28, 2014 when Defendants terminated her employment.

COMPLAINT AND JURY DEMAND - 2

2.2 Defendant, Lennar Corporation, with its principal place of business in Miami, Florida, is engaged in the business of building homes throughout the United States including the Western District of Washington.

2.3 Defendant, Universal American Mortgage Company, LLC, is a subsidiary of Defendant Lennar Corporation and is engaged in the business of providing financing and related services to potential buyers of homes built by Defendant Lennar Corporation in various States throughout the United States including the Western District of Washington.

2.4 Defendant, Eagle Home Mortgage of California, Inc., is a subsidiary of Defendant Lennar Corporation and is engaged in the business of providing financing and related services to potential buyers of homes built by Defendant Lennar Corporation in various States throughout the United States including the Western District of Washington.

## III. STATEMENT OF FACTS

**A. Defendants, who all engaged in fraudulently-certified lending practices in concert, repeatedly violated the False Claims Act.**

3.1 Defendant Lennar Corporation builds homes for all types of individuals and families throughout the United States including the Western District of Washington. Defendants Universal American Mortgage Company, LLC and Eagle Home Mortgage of California, Inc. provide residential mortgage financing to potential buyers of the homes Defendant Lennar Corporation builds in the Western District of Washington.

3.2 Defendants, collectively, as one of the largest originator of home mortgages in the United States, have been participants in the Direct Endorsement Lender program – a federal program administered by the Federal Housing Administration ("FHA") for more than 25 years.

3.3 As Direct Endorsement Lenders ("DEL"), Defendants have the authority to

COMPLAINT AND JURY DEMAND - 3

originate, underwrite, and certify mortgages for FHA insurance. If a DEL approves a mortgage loan for FHA insurance and the loan later defaults, the holder of the loan may submit an insurance claim to the U.S. Department of Housing and Urban Development ("HUD") for the costs associated with the defaulted loan, which HUD must then pay.

3.4 Under the DEL program, neither the FHA nor HUD reviews a loan before it is endorsed for FHA insurance. DELs, like Defendants are therefore required to follow program rules designed to ensure that they are properly underwriting and certifying mortgages for FHA insurance, and maintaining a quality control program that can prevent and correct any deficiencies in their underwriting. The quality control program requirements include conducting a full review of all loans that go into default within the first six payments ("early payment defaults"); taking prompt and adequate corrective action upon discovery of fraud or serious underwriting problems; and disclosing to HUD, within 60 days of initial discovery, all loans containing evidence of fraud or other serious underwriting problems. Defendants failed to comply with at least three of these basic requirements.

3.5 Since at least January 2013, and on information and belief since many years before that, Defendants engaged in a regular, nationwide practice of reckless origination and underwriting of its retail FHA loans. Defendants falsely certified their compliance with the DEL program requirements. In addition, Defendants falsely certified that thousands of retail FHA loans met HUD's requirements and therefore were eligible for FHA insurance. During this period, although Defendants certified to HUD that their retail FHA loans met HUD's requirements for proper origination and underwriting, and were therefore eligible for FHA insurance, Defendants knew that a substantial percentage of those loans – nearly half in certain months in the office where Relator Nguyen-Seligman was employed – had not been properly

underwritten according to HUD guidelines, contained unacceptable risk to HUD, and as a result were ineligible for FHA insurance.

3.6    Defendants knew that their underwriters routinely failed to perform basic due diligence, failed to verify information in the loan file that bore directly on the borrower's ability to make payments on the mortgage, and repeatedly certified mortgage loans that contained serious defects and departures from HUD's underwriting standards. The extremely poor quality of Defendants' loans was a function of management's nearly singular focus on increasing the volume of FHA originations and Defendants' profits rather than on the quality of the loans being originated.

3.7    Defendants aggravated their widespread underwriting violations by: failing to investigate loans that were identified by auditors as violating HUD underwriting guidelines, retaliating against their employees who identified and reported violations of HUD underwriting guidelines to management, instructing auditors to overlook problems, failing to provide their inexperienced staffs with proper training; paying improper bonuses to their underwriters to incentivize them to approve as many FHA loans as possible; and applying pressure on loan officers and underwriters to originate and approve more and more FHA loans as quickly as possible. As examples:

> 3.7.1 Relator herein is aware of multiple loans where funds to close were not clearly sourced, meaning that the file did not contain an adequate paper trail establishing where the funds came from. In two specific files, Ms. Nguyen-Seligman identified that the borrower brought in funds to escrow for closing, but did not document where additional money came from. In three or more files, the underwriter calculated only 14 months of income to show 35% debt to income ratio, but on FHA files the standard was

to use 24 months of income for the calculation. Using that standard, Relator calculated the ratio to be 58% debt to income ratio with no compensating factors.

3.7.2 Another example occurred when a borrower was working at a family business. His previous tax return indicated only $13,000 in annual income, but the year before applying for the mortgage, his income jumped to $47,000 in the same job. The file had no explanation letters, and the underwriter used only the current year's income to qualify the borrower. The borrower's sister provided a gift letter of $10,000, but at the closing wired gift funds of $31,000 with no updated gift letter and source of funds such as the donor's bank statements to indicate the donor had the ability to gift such funds.

3.7.3 Borrowers and loan numbers associated with these transactions include: Truong, 0007697832; Gurling, 0007695638; Kerr, 0007749435; Rathburn, 0007737133; and Neighbors, 0007696131. This is not intended as a complete list, but is merely illustrative of the type of problems Relator uncovered and which are alleged herein as systemic fraud against the United States Government.

3.8 Defendants' senior management repeatedly ignored their own Quality Assurance departments' efforts to have management correct the practices leading to the material violations they found in a significant portion of Defendants' retail home loans, and failed to report loans to HUD that they knew were rife with serious violations or fraud.

3.9 By certifying thousands of ineligible mortgages and falsely certifying their compliance with HUD rules, Defendants wrongfully obtained endorsement of these seriously deficient mortgages for FHA insurance, thereby putting billions of FHA dollars at risk. On information and belief, as a result HUD has paid hundreds of millions of dollars in FHA benefits on claims for defaulted loans that Defendants never should have certified for FHA insurance in

the first place.

3.10  Defendants also failed to conduct adequate quality control and comply with their self-reporting requirements to HUD. In particular, Defendants failed to report to HUD loans that they originated and certified that contained material underwriting violations and/or fraud. Additional details are identified below, but Ms. Nguyen-Seligman's supervisor deleted multiple auditor exceptions to the loans before they were sold.  On information and belief she did so at the direction of her upper management, who also instructed her peers in other states to do the same.

3.11  As a result of Defendants' fraudulently-certified lending practices and intentional concealment of the loans internally identified as containing material violations, Defendants avoided indemnification to HUD on hundreds of millions of dollars in FHA benefits paid on claims for defaults on those loans. Defendants additionally avoided indemnification on millions more for the early payment defaults they improperly failed to review and report.

3.12  As a result of Defendants' fraudulently-certified lending practices and intentional concealment of the loans internally identified as containing material violations, the United States has incurred additional liabilities through past and future payments due to loan guarantees fraudulently induced by Defendants

**B. Ms. Nguyen-Seligman's Protected Activity**

3.13 Ms. Nguyen-Seligman began working for Defendants in January 2013 in Defendants' Seattle office. She reported to Eva Alconcher who also worked in Defendants' Seattle office. Ms. Alconcher in turn reported to Denise Peller whose office was in Defendants' Headquarters located in Florida.

COMPLAINT AND JURY DEMAND - 7

Teller & Associates, PLLC
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

3.14  As an Auditor working for Defendants, Ms. Nguyen-Seligman was responsible for making certain that Defendants' routinely performed basic due diligence, verified information in loan files that bore directly on borrowers' ability to make payments on mortgages, and did not originate, underwrite and certify mortgage loans for FHA insurance that contained serious defects and departures from HUD's underwriting standards.  Her audits resulted in "exceptions" recorded by computer using a program called "ACES".

3.15  Ms. Nguyen-Seligman performed her job well and, until about the early part of August 2013, she often received comments from Ms. Alconcher praising the job she was doing. During this time, Ms. Nguyen-Seligman issued exceptions to some of the files relating to mortgage applications. As far as Ms. Nguyen-Seligman knew, those exceptions were corrected before the mortgages were originated, underwritten and certified by Defendants.

3.16  In or around early August 2013, Ms. Nguyen-Seligman discovered that Ms. Alconcher had deleted some of Ms. Nguyen-Seligman's exceptions, including relating to missing documents in the mortgage process that she was auditing.  When Ms. Nguyen-Seligman brought this to Ms. Alconcher's attention, she told Ms. Nguyen-Seligman that at she was doing "great" in her job but that she should ignore missing documents and other issues regarding the exceptions she was making. Specifically, Ms. Alconcher told her things like: "You don't want to hurt the branch by issuing that exception." She also told Ms. Nguyen-Seligman things like: "You don't want to give the underwriter a bad report card by issuing that exception." Ms. Aloncher made statements like this multiple times.  Another auditor indicated that similar pressures were influencing her not to issue exceptions to files out of fear of retaliation.

3.17  Shortly thereafter, Ms. Nguyen-Seligman spoke to one of her co-workers (Becky Carter), who reported to Seattle underwriting manager Kathy Bock regarding Ms. Alconcher's

COMPLAINT AND JURY DEMAND - 8

Teller & Associates, PLLC
1139 34th Ave, Suite B
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

Seligman's November 2013 written warning. Ms. Alconcher also included a false statement about neglect of duty to chat with a co-worker on company-paid time.

3.20  On January 24, 2014, Ms. Nguyen-Seligman was called into Ms. Alconcher's office. Ms. Peller was on the phone with a human resources representative who were both in the Defendants' corporate headquarters in Florida. Ms. Peller stated that she had been told by the human resources person that Ms. Alconcher had given Ms. Nguyen-Seligman two counseling notices and that, since Ms. Nguyen-Seligman was still making "mistakes," she was being terminated that day. Those alleged mistakes involved files that Ms. Nguyen-Seligman had completed months before, prior to her first written warning.  Ms. Nguyen-Seligman told Ms. Peller that Ms. Alconcher had coached her on what to do with the files that were the subject of the counseling notices. Ms. Nguyen-Seligman asked that she be allowed to review her notes to respond to the accusations being made against her. Ms. Peller refused and told Ms. Nguyen-Seligman that she was being terminated immediately.

3.21  Ms. Nguyen-Seligman's employment with Defendants was terminated because she opposed and investigated Defendants' fraudulently-certified lending practices set forth above.

## IV. CLAIMS OF THE UNITED STATES

4.1  The facts stated above give rise to violations of the Federal False Claims Act, 31 U.S.C. 3729(a)(1).

4.2  The Defendants are liable for the actions of their agents, and their employees under the doctrine of Respondeat Superior.

## V. DAMAGES SUFFERED BY THE UNITED STATES

5.1  As a proximate cause of the fraudulent practices described above the United States of America has suffered damages in amounts fraudulently paid by the United States,

6. Other actual damages in amounts to be proven at the time of trial.

**On behalf of either or both the United States and Ms. Nguyen-Seligman**

7. Prejudgment interest.

8. Reasonable attorney fees and costs.

9. Whatever additional damages the Court shall deem to be just and equitable.

DATED this 18th day of September 2014.

**Stephen Teller & Associates, PLLC**

Stephen A. Teller, WSBA #23372

**Pauley Law Group, PLLC**

Ryan J. Pauley, WSBA #40625
Timothy J. Pauley, WSBA #18583

Attorneys for Kat Nguyen-Seligman